IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 4, 2008

Charles R. Fulbruge III
Clerk

No. 06-20973

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

KENNETH RICHARD ALLISON

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
4:06-CR-143

Before JONES, Chief Judge, and GARWOOD and JOLLY, Circuit Judges.

PER CURIAM:[*]

Kenneth Richard Allison appeals his conviction for corruptly interfering with the administration of the Internal Revenue Code and willfully making and subscribing false documents. He contends that he was denied the constitutional right to represent himself and that the evidence was insufficient to support his conviction. Finding no error, we AFFIRM his conviction.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Allison was indicted for one count of corruptly interfering with the administration of the Internal Revenue Code in violation 26 U.S.C. § 7212(a) and five counts of willfully making and subscribing false documents in violation of 26 U.S.C. § 7206(1).

Before trial the government moved for a hearing under Faretta v. California, 422 U.S. 806 (1975), to determine whether Allison waived his right to be represented by counsel. Allison had filed several documents and pro se motions, suggesting a desire to represent himself. At the hearing, the court questioned Allison about his understanding of the processes involved in representing himself and advised him of the difficulties of self-representation. Allison indicated a desire to file his own motions and have his court-appointed attorney act as standby counsel. However, Allison repeatedly refused to waive his constitutional right to be represented by counsel and finally stated that he would do so only under duress. The court found that Allison had not waived his right to be represented by counsel and that the court-appointed counsel would continue to represent him.

At trial, evidence was presented showing that Allison had been arrested in November 1998 following a traffic stop. The arrest resulted in traffic citations for Allison and proceedings in the Municipal Court for the City of La Porte. In October 1999, the City of La Porte, the municipal court judge in Allison's traffic case, the arresting officer, and other municipal employees were named in a federal civil lawsuit brought by Allison. The municipal court judge testified that he transferred the case to the Justice of the Peace Court to avoid a conflict of interest. In April 2000, the traffic case was transferred to the Harris County Court.

In May 2000 Allison filed six tax forms, Form 8300, Report of Cash Payments Over $10,000 Received in a Trade or Business.[1]  The forms falsely indicated that the municipal court clerk for the City of La Porte had received money orders in  amounts ranging from $1,000,000 to $99,000,000,000.  The forms indicated that the money orders were received on Allison's behalf from employees of the City of La Porte, including police officers, the mayor of La Porte, clerks of the La Porte municipal court, and the municipal court judge in Allison's traffic case.  Each of the forms was signed by Allison under penalty of perjury, included his social security number, and designated his title as "employer."  The word "refused" was written in a box intended for the payor's social security number, and a box labeled "suspicious transaction" was checked on each form.  A government witness who processes such forms for the IRS testified that written words in the box intended for a social security number trigger an "error correspondence," which results in a letter to the individual from whom the cash was received seeking additional information about the transaction.  Checking the box labeled "suspicious transaction" results in the form being flagged by the computer system, resulting in further investigation of the reported transaction and the parties involved.

Allison did not deny filing the Form 8300s, and his trial counsel conceded that they were false.  The theory of his defense was that he did not willfully lie and did not act corruptly because he believed that the forms were legitimate according to a set of peculiar claims sometimes called the "Redemption Theory." According to Allison, the United States maintains direct treasury accounts linked to citizens' birth certificates from which citizens can make transfers of debt through a "strawman." Allison testified that he was able to mail the municipal employees various papers purporting to be "bills of exchange" and,

---

[1] One of the forms apparently was not signed, and Allison was not charged based on that form.

when he received no response, legitimately report to the IRS transfers of money or debt in the accounts maintained by the treasury. The details of the theory are convoluted, but the essence of Allison's testimony was that he believed the Form 8300s he filed were legitimate.

Rejecting this testimony, the jury found Allison guilty on all counts. For each of the six counts, Allison was sentenced to sixteen months imprisonment, one year of supervised release, and a fine, all to run concurrently.

## II.

Allison contends on appeal that the district court erred by denying him the right to represent himself. He also challenges the sufficiency of the evidence to support his conviction under 26 U.S.C. § 7212(a), contending that the evidence did not prove he acted "corruptly," as required by the statute.[2]

The government contends that Allison did not unequivocally waive his Sixth Amendment right to counsel and the court therefore properly denied his request to represent himself. The government contends that the evidence was sufficient to show that Allison acted corruptly because there was sufficient evidence for the jury to find that he acted to obtain an unlawful benefit for himself.

## III.

## A.

Allison first contends that he was denied his constitutional right to self-representation, as recognized in Faretta v. California, 422 U.S. 806 (1975), and

---

[2] Allison also contends that he received ineffective assistance of counsel. He concedes, however, that the "record is not sufficiently developed to allow a fair evaluation of the merits of the claim" and raises it only to preserve it for later review. We have held that "Sixth Amendment claims of ineffective assistance of counsel should not be litigated on direct appeal, unless they were previously presented to the trial court." United States v. Partida, 385 F.3d 546, 568 (5th Cir. 2004). This court will consider such claims on direct appeal only in "rare cases" in which the record allows a reviewing court to "fairly evaluate the merits of the claim." Id. We do not find this to be such a case and accordingly decline to address this claim for the first time on appeal.

its progeny. He contends that the district court erred by not allowing him to proceed pro se, with his court-appointed attorney as standby counsel.[3]

We review a constitutional challenge relating to the Sixth Amendment right of self-representation de novo. United States v. Jones, 421 F.3d 359, 363 (5th Cir. 2005).

In Faretta, the Supreme Court held that a criminal defendant has a right to represent himself, provided that the accused "knowingly and intelligently" waives the right to be represented by counsel. 422 U.S. at 835. Such a waiver must be "clear and unequivocal," a requirement this circuit has strictly construed. Burton v. Collins, 937 F.2d 131, 133 (5th Cir. 1991). We "indulge every reasonable presumption against waiver" of the fundamental constitutional right to the assistance of counsel. Id.

In this case, Allison did not clearly and unequivocally waive his Sixth Amendment right to the assistance of counsel. Instead, he unequivocally stated several times during his Faretta hearing that he did not waive his constitutional rights. Although he also expressed a desire to manage his own case and file his own papers, he would not consent to waive his constitutional right to the assistance of counsel. He suggested that he would waive his right to counsel "under duress," but that he "can't do it freely." The district court properly denied this request, because a waiver made under duress is by definition not a voluntary waiver of a fundamental constitutional right.

---

[3] Allison criticizes some of the district court's comments and admonitions encouraging him to accept the assistance of counsel and advising him of the difficult nature of the task of representing himself. Although he states that some of the comments the court made unfairly prejudiced him, he does not show any particular prejudice arising from the court's comments or that the court failed to properly execute its duty to make a defendant seeking to represent himself "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 835 (quotation marks and citation omitted).

Allison's contention that he was entitled to proceed with standby counsel is without merit. A defendant proceeding pro se has no constitutional right to standby counsel. McQueen v. Blackburn, 755 F.2d 1174, 1178 (5th Cir. 1985) (holding that, although the appointment of standby counsel following the dismissal of trial counsel is the preferred practice, it is not mandatory). See also United States v. Mikolajczyk, 137 F.3d 237, 246 (5th Cir. 1998). More importantly, the district court could not appoint standby counsel unless Allison was proceeding pro se, having unequivocally waived his right to be represented by counsel. As the district court properly found, Allison did not waive his right to counsel, so the court did not err in denying his request to represent himself.

B.

Allison contends that the evidence was insufficient to support the jury's finding that he acted "corruptly" to impede the administration of the Internal Revenue Code as proscribed by 26 U.S.C. § 7212(a).

When the sufficiency of evidence is challenged, the standard of review that we apply is whether a rational jury could have found that the evidence established the essential elements of the crime beyond a reasonable doubt. United States v. Mitchell, 484 F.3d 762, 768 (5th Cir. 2007). We consider the evidence, all inferences drawn from it, and all credibility determinations in the light most favorable to the verdict. Id. "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." Id. (quotation marks and citation omitted).

Section 7212(a) provides that "[w]hoever corruptly. . . endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title or in any other way corruptly . . . obstructs or impedes, or endeavors to obstruct or impede the due administration of this title" shall be guilty of an offense. We have stated that one acts corruptly in the

6

context of § 7212(a) when one acts "with the intention of securing improper benefits or advantages for one's self or others." United States v. Reeves, 752 F.2d 995, 1001-02 (5th Cir. 1985). See United States v. Saldana, 427 F.3d 298, 305 (5th Cir. 2005) (holding that the improper benefit sought need not be a benefit under the tax laws to support conviction under § 7212); United States v. Bowman, 173 F.3d 595, 600 (6th Cir. 1999) (holding that § 7212(a) proscribes "an individual's deliberate filing of false forms with the IRS specifically for the purpose of causing the IRS to initiate action against another taxpayer").

In this case, there was sufficient evidence for the jury to find beyond a reasonable doubt that Allison filed false Form 8300s in order to harass or intimidate city employees and thereby obtain some advantage in the proceedings against him arising out of his arrest and related traffic citations or in the federal lawsuit he had filed against the city and its employees. For example, a jury could have concluded that such intimidation as bringing the IRS in to investigate city employees would deter any prosecution of him and cause those involved in enforcing the laws to treat Allison exceptionally; furthermore, a reasonable jury could have concluded that the city might find it to its advantage to settle the civil suit favorably to Allison to avoid such harassing tactics. Or a jury easily could have concluded that Allison believed that such tactics would benefit him in his litigation with the city. Indeed, an IRS witness testified that filling out the forms with the word "refused" written in the blank intended for a social security number and with the "suspicious transaction" box checked would lead to investigation by the IRS. Both his criminal and civil proceedings were pending at or around the time he filed the false Form 8300s. Although Allison testified that he believed his actions were legitimate and that he sought no benefit for himself, the jury was entitled to reject Allison's testimony. Viewing the evidence in the light most favorable to the verdict, we hold that there was sufficient evidence to support the jury's conclusion that Allison acted

with the intent to secure an improper advantage for himself and therefore acted corruptly under § 7212(a).

## IV.

For the foregoing reasons Allison's conviction is

AFFIRMED.